UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Devon Seivers,

      Plaintiff,

v.

City of Minneapolis, Minneapolis Police Officers James Bulleigh (Badge #08060) and Daniel Lysholm (Badge #4309), both individually and officially, John Does and other unnamed Police Officers, and Timothy Dolan, Chief of Minneapolis Police, personally and individually,

      Defendants.

Court File No.: 09-CV-0816 (DSD/SRN)

**AFFIDAVIT OF TIMOTHY DOLAN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

STATE OF MINNESOTA )
                       )SS
COUNTY OF HENNEPIN )

Your Affiant, being first duly sworn on oath, deposes and states as follows:

1. Your Affiant is the Chief of Police of the Minneapolis Police Department.

2. In this capacity, I have general supervisory control over Minneapolis Police Officers, and I direct and implement policies and procedures for the Minneapolis Police Department.

3. As Chief of Police, I take an active role in the promulgation of rules and regulations in the Police Department. It has been my intent that the rules, regulations, custom and practices of the Minneapolis Police Department reflect the laws of the State of Minnesota and the Constitution of the United States.

4. It is my policy and the official policy of the City of Minneapolis that complaints against police officers shall be vigorously and immediately investigated and, where misconduct is detected, that disciplinary action be taken against the offending officer. Neither I nor the City of Minneapolis have any official or unofficial policy, custom, or practice of hiring or retaining police officers who have a history of improper violence, harassment or misconduct, unconstitutional or otherwise, against citizens or property.

5. During my tenure with the Minneapolis Police Department, I am not aware of any custom, policy or practice authorizing or tolerating unconstitutional conduct by police officers. In my capacity as Police Chief, I have had no knowledge of any pattern of unconstitutional misconduct or other misconduct either by the officers named in this lawsuit or by Minneapolis police officers in general.

6. The Minneapolis Police Department maintains an Internal Affairs Unit responsible for investigating allegations of police misconduct. Since taking over the Minneapolis Police Department as acting Chief of Police, and later as Chief of Police, I have required that the Minneapolis Police Department Internal Affairs Unit promptly and swiftly take steps to investigate complaints of police misconduct.

7. In 1991, the City of Minneapolis created the Civilian Review Authority which gained jurisdiction over the investigation of complaints by citizens against Minneapolis Police Officers. Under the ordinance creating the Civilian Review Authority, your Affiant remains responsible for the imposition of discipline, if any, after a finding of misconduct on the part of an officer. When the Civilian Review Authority

sustains a complaint against an officer, your Affiant reviews all material portions of the files, and in those cases in which discipline should be imposed, your Affiant has imposed the appropriate discipline. Your Affiant retains discretionary authority under the ordinance creating the Civilian Review Authority to impose discipline if that is the action which is warranted.

8. Since I have served both the Acting Chief of Police and, as the Chief of Police, I have disciplined numerous officers for violation of departmental rules. As part of our disciplinary process, I have disciplined officers for different violations of Departmental policies or procedures.

9. The City of Minneapolis hires as police officers only those individuals who have been licensed by the Minnesota Police Officers Standard and Training (POST) Board. In addition, all applicants for police officer are required to undergo a thorough background check by the City of Minneapolis. POST requires applicants to have a minimum of 2 years of college in addition to police officer's skills. As a minimum, in order to be licensed as police officers, POST requires individuals to have an academic education component including instruction in the administration of justice, Minnesota statutes, criminal law, human behavior, juvenile justice, law enforcement operations and procedures, including use of force, and first aid. POST further requires a clinical skills education component including criminal investigation and patrol functions, firearms, and defensive tactics including the use of force, and driving skills. Once licensed by POST, all full-time police officers in the State are required to attend 48 hours of in-service training tri-annually to maintain their licenses.

10. In addition to the training required by POST, the City of Minneapolis provides significant additional training. When officers are hired by the City of Minneapolis they are required to participate in a recruit academy. Since the mid-1980s, the recruit academy has consisted of an additional 4 to 12 weeks of classroom training. Significant portions of the academy cover the use of force including the use of weapons, defensive tactics, handcuffing, and use of restraints. The academy further focuses on the MPD Policies and Procedures Manual and officers are required to comply with those rules and policies. The entire MPD Policy and Procedure Manual is covered during the academy of training. The Manual includes sections on the Department's investigation of traffic accidents and procedures for the investigation of allegations of driving while under the influence of alcohol. The MPD Policy and Procedure Manual, including its rules on traffic accident investigation and driving while under the influence of alcohol are continually updated. All Minneapolis police officers are required to have a working knowledge of the rules and regulations contained in the MPD Policy and Procedure Manual. The recruit training also covers state statutes governing the accident investigation and alcohol related traffic arrests. I am also aware that, in the past, the Minneapolis Police Department utilized a Cadet program that was designed to recruit and assist individuals who did not have a law enforcement background, but did have a 4-year college degree, into law enforcement. The Cadet program covered the same materials covered in the Academy, but also gave the Cadets the general law enforcement education necessary to be eligible for licensing by the POST Board. Once an officer has successfully completed the Cadet program or the academy, she/he is placed into the Field

Training Officer Program which may last up to six months. During the Field Training Program, officers have individualized daily training by superior officers.

11. As stated above, officers are required to attend 48 hours of in-service training tri-annually to maintain their licenses. The City of Minneapolis Police Department Training Division is certified by POST to provide this continuing police education. The Minneapolis Police Department requires its officers to attend a minimum of 16 hours of in-service training each year.

12. When a lawsuit or administrative charge of discrimination is filed against the City of Minneapolis which involves Police Department personnel, the lawsuit or charge is automatically reviewed by the Minneapolis Police Department Internal Affairs Unit. If the review suggests criminal conduct or possible policy violations, an internal investigation is immediately opened. Internal Affairs' records will then reflect that a charge is pending against any and all officers named in the lawsuit or charge.

13. From my review of Minneapolis Police Department files, I am aware that Officer James Bulleigh was hired as a police officer for the City of Minneapolis on September 24, 1987, and he has remained continuously employed by the City of Minneapolis to the present date.

14. During Officer Bulleigh's nearly 23 years with the Minneapolis Police Department, the Minneapolis Police Department Internal Affairs Unit has sustained six complaints against Officer Bulleigh. The complaints were investigated, and Officer Bulleigh was disciplined.

15. During Officer Bulleigh's nearly 23 years with the Minneapolis Police Department, the Civilian Review Authority has sustained six complaints against Officer Bulleigh, other than the incident in question. The complaints were investigated, and Officer Bulleigh was disciplined.

16. From my review of Minneapolis Police Department files, I am aware that Officer Daniel Lysholm was hired as a police officer for the City of Minneapolis on April 4, 1988, and he has remained continuously employed by the City of Minneapolis until the present date.

17. During Officer Lysholm's 22 years with the Minneapolis Police Department, the Minneapolis Police Department Internal Affairs Unit has two sustained complaints against Officer Lysholm other than the incident in question. The complaints were investigated and Officer Lysholm was disciplined.

18. During Officer Lysholm's 22 years with the Minneapolis Police Department, the Civilian Review Authority not sustained any complaints against Officer Lysholm.

19. Plaintiff made a complaint to the Civilian Review Authority pertaining to the incident in question. The Civilian Review Authority investigated Plaintiff's complaint, made recommendations, held a hearing, rendered findings of fact and found declared Plaintiff's complaint against Officers Bulleigh and Lysholm was "not

sustained."

Further Affiant sayeth naught.

Subscribed and sworn to
before me this 29 day
of June, 2010

_____
Timothy Dolan

_____
Notary Public
My Commission expires: 1\31\15

NINA J. DOREE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2015