```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 09-816(DSD/SER)
```

Devon Seivers,

        Plaintiff,

v.                                                          **ORDER**

City of Minneapolis, Minneapolis
Police Officers James Bulleigh
(Badge #08060) and Daniel Lysholm
(Badge #4309), both individually
and officially, John Does and other
unnamed Police Officers, and
Timothy Dolan, Chief of
Minneapolis Police, personally
and individually,

        Defendants.

> Albert T. Goins, Sr., Esq. and Goins Law Office, Ltd., 301 Fourth Avenue, Suite 378, Grain Exchange Building, Minneapolis, MN 55415, counsel for plaintiff.
>
> Darla J. Boggs, Esq., Gregory P. Sautter, Esq., Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, MN 55415, counsel for defendants.

This matter is before the court upon a motion for partial summary judgment by the City of Minneapolis, Chief of Police Timothy Dolan, and Minneapolis Police Officers James Bulleigh and Daniel Lysholm (officers). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This dispute arises out of the September 9, 2006, arrest of plaintiff Devon Seivers.[1] Non-parties John Cich and Joseph Poidinger, detectives for the Hennepin County Sheriff (detectives), were on patrol in downtown Minneapolis when they observed Seivers, an African-American male, in a vehicle with Illinois plates. A man approached the vehicle, got in and quickly "hop[ped] out" again. Seivers Dep. 26-30, May 25, 2010. Seivers then drove away. Id. at 24, 30; Cich Aff. ¶¶ 1, 3. The detectives stopped Seivers for suspected drug dealing. They took his license and registration, and told him to get out of the car. Seivers Dep. 30. Seivers complied. Id. at 32. The detectives found a small amount of marijuana in Seivers's pocket during a pat-down. Id. at 32-33. They handcuffed Seivers and placed him in their squad car. Id. at 36. Seivers consented to a vehicle search. Id. at 35. The parties dispute the events that followed, and the court accepts the facts as presented by Seivers for the purpose of this motion.[2]

According to Seivers, the detectives did not find any drugs in his vehicle after the search. Id. at 37. The detectives released

---

[1] Although the parties do not dispute that the incident occurred in 2006, several instances in the record indicate 2007. See, e.g., Seivers Dep. Ex. 3, at 1; Seivers Dep. 19.

[2] The officers claim that they had no interaction or physical contact with Seivers. Bulleigh Dep. 51; Lysholm Dep. 42, 44-45. The detectives' account supports these assertions. Cich Aff. ¶¶ 6-10.

2

him from the squad car, removed the handcuffs and gave him a citation. Seivers returned to the driver's seat in his vehicle. In his rearview mirror, Seivers saw the officers arrive on bicycles and approach the detectives's squad car. Id. at 39-40, 42-44. Seivers did not see the officers open the doors to the squad car, search the squad car, place anything into the squad car or remove anything from the squad car. Id. at 43, 66-69. Seivers says that the officers approached his vehicle, knocked on his window, opened the car door, pulled him from the car, pushed him against the hood, handcuffed him, swore at him, yelled at him, told him that they had found drugs he stashed in the squad car, called him a "gangbanger," and put a pistol in his ear and face.[3] Id. at 44, 53-56. Seivers claims that Bulleigh then head butted him while wearing a bicycle helmet. Id. at 46, 49. Seivers "started yelling and screaming," "moving all over," "acting like [he] was trying to pass out" and as though he was "frantic and hysterical." Id. at 44-45, 60.

At some point, Seivers saw "the police" cup his hands together to hold "some white stuff in a plastic bag." Id. at 66. Seivers does not remember which officer was holding the plastic bag or when he was holding it. Id. at 67. Seivers was then placed in the squad car. Id. at 62. The detectives took Seivers to the Hennepin

---

[3] It is not clear from the record whether Seivers claims that both officers approached his vehicle. Compare Seivers Dep. 44 (referring to one officer) with Seivers Dep. 63 ("They both was in it together. One was the more aggressive.").

3

County jail and booked him for possession of drugs. Cich Aff. ¶ 12. Seivers suffered headaches and muscle pain in his arm for one week after the incident. Seivers Dep. 51-52, 79, 107. Since the incident, he is scared to go downtown, scared of police and scared of being framed. Id. at 18, 99.

On March 19, 2009, Seivers filed a nine-count complaint in state court alleging use of excessive force, deprivation of due process, unreasonable seizure, race discrimination, assault motivated by bias, invasion of privacy and negligent infliction of emotional distress.[4] Defendants timely removed and move for partial summary judgment on all claims except use of excessive force.[5] The court now considers the motion.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[4] Seivers filed an amended complaint on September 10, 2010. See ECF No. 42.

[5] Defendants initially moved for summary judgment on all counts, but indicate that they are not pursuing summary judgment on the excessive force claim (count I). See ECF Nos. 10, 12, 42. The court therefore construes the motion as a motion for partial summary judgment..

4

P. 56(c)[6]; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.[7] Id. at 322-23.

**I. Section 1983**

Section 1983 of Title 42 of the United States Code provides in relevant part:

---

[6] The court cites the version of Rule 56 in force at the time of the motion and oral argument.

[7] As an initial matter, Seivers has no cause of action against the officers arising out of the vehicle search because he admits that they did not participate in the search. See Seivers Dep. 40 (officers arrived after detectives completed the vehicle search). Therefore, the court grants summary judgment on the Fourth Amendment and tort claim based on the vehicle search.

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 is "'not itself a source of substantive rights'" but merely affords "'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a court considering a § 1983 claim must first "identify the specific constitutional right allegedly infringed." Id. at 271 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).

### A. Individual Liability

Seivers claims that defendants violated "his rights to be free from unreasonable seizures" and "his right to due process of law" in violation of the Fourth, Fifth and Fourteenth Amendments. See Am. Compl. ¶ 29. The officers argue that they are entitled to qualified immunity on this claim.

Qualified immunity protects from civil liability government agents who perform discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). The court applies the doctrine of qualified immunity in a manner that "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who

6

knowingly violate the law.'" Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). In evaluating a claim of qualified immunity, the initial inquiry is whether the facts show a violation of a constitutional right. Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005). If the facts do not establish a violation of a constitutional right, no further inquiry is necessary, and summary judgment is warranted. Id.

### 1. Due Process Violations

The Due Process Clause protects every individual against the deprivation of life, liberty and property without due process of law.[8] U.S. Const. Amendment XIV, § 1. Procedural due process requires the deprivation of a life, liberty or property interest. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). Substantive due process refers to the right of every person to be free from government interference with certain fundamental rights and liberty interests. Washington v. Glucksberg, 521 U.S. 702, 720 (1997). The fundamental right must be "deeply rooted in this Nation's history and tradition." Id. A violation of that right must be so wrongful as to "shock the conscience." Rochin v. California, 342 U.S. 165, 172 (1952).

---

[8] Seivers does not indicate whether he asserts a violation of procedural or substantive due process. Accordingly, the court analyzes both causes of action.

7

Seivers claims that his right to due process was violated when he was arrested based on false and planted evidence. See Pl.'s Mem. Opp'n 27-28, ECF No. 31; Am. Comp. IV. "A properly supported motion for summary judgment is not defeated by self-serving affidavits .... Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Bacon v. Hennepin Cnty. Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008) (internal citations and quotation marks omitted). Speculation that certain legal conclusions might theoretically be possible does not create a genuine dispute of fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). Seivers's only evidence that the crack cocaine was planted is his statement that he "didn't have no drugs" and a bald accusation that the officers planted it. A jury could find from this evidence that the drugs did not come from Seivers. Such a finding does not, however, constitute evidence that the officers planted the drugs. Because Seivers present no such evidence, the due process claim based on planted drugs fails.

### 2. Fourth Amendment

The Constitution guarantees freedom from unreasonable seizure. See U.S. Const. amend. IV. An arrest, even without a warrant, is

reasonable when probable cause exists. See Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975); Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir. 1999). Probable cause for arrest exists when "'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing the [suspect] had committed or was committing an offense.'" Warren v. City of Lincoln, 864 F.2d 1436, 1440 (8th Cir. 1989)(quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

The officers arrived after the detectives stopped Seivers. The detectives informed the officers that Seivers was stopped for suspected drug dealing. The detectives found marijuana on Seivers's person before his vehicle was searched, and the officers found crack cocaine in the squad car where he had been detained. In light of the circumstances, there was probable cause for Seivers's arrest. Therefore, the arrest was reasonable, and summary judgment is warranted on Count IV.

**B. Municipal Liability**

To bring a successful § 1983 claim against a municipality, a plaintiff must allege and prove that the municipality has an official policy or custom that caused the deprivation of his civil rights. See Monell v. Dep't of Soc. Servs. of N.Y.C, 436 U.S. 658, 690-91 (1978). To establish a constitutional violation resulting from a custom or policy, "a plaintiff must show that his alleged injury was caused by municipal employees engaging in a widespread

9

and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." Russell v. Hennepin Cnty., 420 F.3d 841, 849 (8th Cir. 2005).

Seivers alleges that the City has a "pattern or practice of illegal and condoned police misconduct" that is "carried out pursuant to a policy, procedure or custom," but he provides no facts or evidence to support his claim. See Am. Comp. ¶¶ 39-40. A single incident cannot establish a custom or give rise to municipal liability. McGautha v. Jackson Cnty., Mo., Collections Dept., 36 F.3d 53, 57 (8th Cir. 1994). Therefore, summary judgment is warranted on Count VI.

## II. Claims Based on Racial Animus

### 1. Section 1985

To show a civil rights conspiracy under § 1985, Seivers must prove (1) that defendants conspired, (2) for the purpose of depriving a person or class of persons equal protection of the laws, (3) that one or more of the conspirators acted in furtherance of the conspiracy, and (4) that another person was injured or deprived of having and exercising any right or privilege of a citizen of the United States. See Larson by Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (citing 42 U.S.C. § 1985(3)). "It is not enough to merely state ... that a conspiracy has taken place." Laurales v. Desha Cnty. Sch. Dist. #4, 632 F.2d 72, 74 n.3

(8th Cir. 1980). Plaintiff must show "an agreement between the conspirators, by pointing to at least some facts which would suggest that [defendants] reached an understanding to violate [his] rights." Jensen v. Henderson, 315 F.3d 854, 862 (8th Cir. 2002).

Seivers claims that there is evidence of a conspiracy because the detectives and the officers said "[a]ll you guys from Illinois come up to Minnesota to sell drugs." Seivers Dep. 30, 58. These comments do not support an agreement to violate his rights. Although Seivers's memorandum of law cites his deposition extensively, the excerpts do not support a finding of a conspiracy under § 1985. See Pl.'s Mem. Opp'n 7-11. Therefore, summary judgment is warranted on Count V.

### 2. Section 1981 and MHRA

The court analyzes Title VII and MHRA discrimination claims under the same framework. See Riser v. Target Corp., 458 F.3d 817, 820 & n.2 (8th Cir. 2006). To establish a prima facie case of race discrimination, Seivers must show that (1) he is a member of a racial minority, (2) defendants intended to discriminate against him on the basis of race, and (3) the discrimination concerned an area enumerated by the statute. See Williams v. Lindenwood Univ., 288 F.3d 349, 355 (8th Cir. 2002). Intentional discrimination requires a showing "that the officers' actions were racially motivated by purposeful discrimination." Buffkins v. City of Omaha, 922 F.2d

465, 468 (8th Cir. 1990) (citing Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982)).

Seivers claims that the officers actions were racially motivated because they called him a gangbanger and said "all you guys from Illinois come up to Minnesota to sell drugs."[9] Seivers Dep. 30, 52. The term gangbanger can raise an inference of racial discrimination when used interchangeably with references to the race of a plaintiff. See Williams, 288 F.3d at 353, 356 (holding that repeated and interchangeable use of term "black guys" with "gangbangers" raised inference of discrimination). Here, however, there is no evidence that the officers used the term interchangeably with race or that the officers assumed or implied that all gangbangers are black. See id. If anything, the officers associated gangbangers with drug dealers from Illinois, not with persons of a particular race. Therefore, Seivers provides no evidence that the officers acted with racial animus and summary judgment is warranted on Counts VII and VIII.

### 3. Assault Motivated by Bias

Seivers next argues that the officers committed a bias offense in violation of Minnesota Statutes § 611A.79. A "'bias offense'

---

[9] Seivers claims that defendants violated 42 U.S.C. § 1981 by "failing to prevent such a tacit agreement and conspiracy to violate rights under 42 U.S.C. sections 1985 and 1983." Am. Compl. ¶ 44. Because the court has determined that summary judgment is warranted on the § 1985 and § 1983 claims, this basis does not support his § 1981 claim.

means conduct that would constitute a crime and was committed because of the victim's or another's actual or perceived race ...." Minn. Stat. § 611A.79 subdiv. 1. The court has already determined that no evidence supports an inference that the officers acted out of racial animus, and there is no evidence to show that the officers acted "because of" Seivers's race. Therefore, summary judgment is warranted on Count IX.

### III. Tort Claims

#### 1. Negligent Infliction of Emotional Distress

To prevail on a claim for negligent infliction of emotional distress Seivers must prove that the officers owed him a duty of care, breached that duty, the breach caused his injury, he was within the zone of danger of physical impact, he reasonably feared for his safety, and he consequently suffered severe emotional distress with attendant physical manifestations. See Engler v. Ill. Farmers Ins. Co., 706 N.W.2d 764, 767 (Minn. 2005). The "physical injury or symptom requirement ... is a judicial obstacle designed to insure a plaintiff's claim is real." Quill v. Trans World Airlines, Inc., 361 N.W.2d 438, 443 (Minn. Ct. App. 1985) (citation omitted). A claim for negligent infliction of emotion distress requires "an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Id. (citation omitted).

13

Seivers alleges that he had headaches and muscle pain in his arm for a week after the incident. Seivers Dep. 51-52, 79, 107. These short-term symptoms are not the result of emotional distress. Moreover, they are not sufficiently severe to meet the physical manifestation requirement. See Leaon v. Washington Cnty., 397 N.W.2d 867, 875 (Minn. 1986) (holding that lost weight, depression, and feelings of anger, fear, and bitterness do not satisfy physical manifestations test). Accordingly, summary judgment is warranted on Count III.

## 2. Invasion of Privacy

Intrusion upon seclusion "occurs when one 'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another ... if the intrusion would be highly offensive to a reasonable person.'" See Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998) (citation omitted).[10] The court must make a preliminary determination of offensiveness and consider the degree of intrusion and the context, conduct and circumstances surrounding the intrusion. Bauer v. Ford Motor Credit Co., 149 F. Supp. 2d 1106, 1109 (D. Minn. 2001) (citation and internal quotation marks omitted).

---

[10] Minnesota courts also recognize appropriation and publication of private facts as invasion-of-privacy torts, see Lake, 582 N.W.2d at 233, but Seivers pleaded no facts to support those claims.

Seivers claims that physical and verbal abuse by the officers was a highly offensive intrusion. However, the alleged intrusion occurred in public, not in seclusion. See Restatement (Second) Torts § 652B cmt. c. Moreover, Minnesota courts have never recognized a cause of action for invasion of privacy in the context of police conduct. Therefore, summary judgment is warranted on Count II.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for partial summary judgment [ECF No. 10] on Counts II through IX is granted.[11]

Dated: January 25, 2011

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court

---

[11] Because the court grants defendants' motion in full, it does not address arguments regarding statutes of limitations and improper service of process.